UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **IN RE DOXIM, INC. DATA SECURITY INCIDENT LITIGATION** | **2:24-CV-11550-TGB-CI**<br>HON. TERRENCE G. BERG<br>**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (ECF NO. 77)**<br>**AND GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS (ECF NO. 78)** |

Before the Court is Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement. ECF No. 77. Plaintiffs have also filed an Unopposed Motion for Attorneys' Fees, Costs, and Service Awards. ECF No. 78. The Court held an in-person fairness hearing on October 28, 2026, at which counsel for the parties appeared, to determine whether the parties' Amended Settlement Agreement should be given final approval and whether the motion for fees, costs, and service awards should be granted.

Having considered the briefs, exhibits, and oral arguments presented in favor of final approval, the Court is satisfied that: the settlement is fair, adequate, and reasonable; the attorneys' fees and cost

reimbursement and service awards are reasonable; and the settlement is in the best interest of the class as a whole. For the reasons that follow, both Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs and Service Awards will be **GRANTED**.

## I. BACKGROUND

### A. Class Action Complaint and Preliminary Approval of Class Action Settlement

Defendant Doxim, Inc. ('Doxim") is a software-as-a-service company and provides certain customer relationship management services to its credit union clients, including to Defendants Credit Union ONE ("CUO") and Beacon Credit Union ("Beacon"). In the course of that business relationship, the credit unions provided Doxim with their customers' sensitive Private Information, including their names, addresses, financial account numbers, and/or Social Security numbers.[1] On or about December 30, 2023, an unauthorized actor gained access to Doxim's network and computer systems and obtained unauthorized access to Doxim's files (the "Data Incident"). Defendants began notifying affected individuals on May 31, 2024 that their Private Information may have been impacted in the Data Incident.

---

[1] Unless otherwise indicated, capitalized terms in this Order have the same meanings as in the Amended Settlement Agreement at ECF No. 77-2, PageID.1308–47.

As a result of the Data Incident, Doxim and certain of Doxim's credit union clients, including CUO and Beacon, were named in six materially and substantively similar putative class actions, which were subsequently consolidated into this Action. ECF No. 14. The Court appointed Jeff Ostrow of Kopelowitz Ostrow P.A., E. Powell Miller of The Miller Law Firm, P.C., Mariya Weekes of Milberg, PLLC, and Bryan L. Bleichner of Chestnut Cambronne P.A. as Interim Co-Lead Class Counsel for the putative class. *Id.*

On December 9, 2024, Plaintiffs Jonathan McKinley, Bruce Narolis, Rose McNichols, Alex Poplawski, Brian Satterwhite, and Thomas Wardop ("Plaintiffs") filed a Consolidated Class Action Complaint on behalf of themselves and all other similarly situated persons, against Defendants Doxim, Inc., Credit Union ONE, and Beacon Credit Union for their alleged failure to adequately protect Plaintiffs' Private Information as a result of the December 30, 2023 data breach of Doxim, Inc.'s network and computer systems. ECF No. 21.

After Defendants filed three separate motions to dismiss, ECF Nos. 38, 44, 49, which were fully briefed, but before those motions were heard, the parties began discussing settlement and scheduled a mediation. The motions to dismiss were stayed pending mediation. ECF No. 67. Following a successful full-day, arms-length mediation before an experienced mediator, Jill Sperber, Esq. of Judicate West, the parties agreed to the material terms of a settlement to settle all claims against all Defendants.

The parties worked to finalize the settlement and the Settlement Agreement was signed on January 26, 2026, ECF No. 72-2, and amended on April 30, 2026, ECF No. 77-2, as requested by the Court following an initial preliminary approval hearing.

Plaintiffs filed an Amended Motion for Preliminary Approval on May 5, 2026, ECF No. 74, which was heard on June 4, 2026. The Court granted Preliminary Approval of the Amended Settlement on June 5, 2026, provisionally certifying the following class for settlement purposes pursuant to Fed. R. Civ. P. 23(a) and (b)(3):

> All living individuals residing in the United States who were identified by Doxim and who were sent notice by Doxim or Doxim's Credit Union Clients that their Private Information was impacted in the Data Incident.

ECF No. 76, PageID.1246. As discussed more fully in the next section, the Amended Settlement Agreement creates a non-reversionary Settlement Fund for the Settlement Class in the amount of $5,500,000, and Settlement Class Members who submit a Valid Claim by the deadline are eligible to elect one of two Cash Payments and Credit Monitoring Services for one year. ECF No. 77-2.

The Court designated and appointed Plaintiffs Jonathan McKinley, Bruce Narolis, Rose McNichols, Alex Poplawski, Brian Satterwhite, and Thomas Wardrop as the Class Representatives and designated Jeff Ostrow of Kopelowitz Ostrow P.A., E. Powell Miller of The Miller Law Firm, P.C., Mariya Weekes of Milberg, PLLC, and Bryan L. Bleichner of

Chestnut Cambronne P.A. as Class Counsel. ECF No. 76, PageID.1247. The Court also approved Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Settlement Administrator responsible for carrying out the duties set forth in the Settlement Agreement, as well as a proposed settlement Notice to class members and a plan for mailing that Notice to the Settlement Class individuals. ECF No. 76, PageID.1247–52, 1255.

**B. Amended Settlement Agreement**

Under the terms of the Amended Settlement Agreement, Defendants agreed to pay $5,500,000 into a non-reversionary Settlement Fund for the payment of claims, attorneys' fees, service awards, costs, and expenses. A "non-reversionary" fund means that none of the funds may ever be reverted, or returned, to the Defendants. These funds have been deposited with the Claims Administrator, Epiq. Amended Settlement Agreement ("Am. S. Ag.") ¶¶ 75, 78–79, ECF No. 77-2.

The Settlement Website, as well as the Postcard Notice sent to Settlement Class Members, explains that they may be entitled to a Cash Payment and Credit Monitoring, as well as how to submit a Claim Form. *Id.* ¶¶ 76, 93–99; *see* https://www.doximdatasecuritysettlement.com/. Settlement Class Members may submit a claim for "Cash Payment A—Documented Losses", for compensation for unreimbursed documented losses related to the Data Incident as a result of fraud and/or identity theft, up to $5,000, Am. S. Ag. ¶ 84(a), ECF No. 77-2, or "Cash Payment B—Alternate Cash", a claim for pro rata amount of the Net Settlement

Fund, which does not require the submission of any supporting documentation. *Id.* ¶ 84(b). The Net Settlement Fund is the Settlement Fund after deductions for Settlement Administrative Costs, attorneys' fees, costs, and Service Awards. *Id.* ¶ 52. Settlement Class Members may also elect to receive one year, one bureau Credit Monitoring Services, which includes $1 million in insurance coverage. *Id.* ¶ 84(c).

The Amended Settlement Agreement also provides for the following fees and expenses to be paid out of the Settlement Fund before the pro rata distribution to Claimants: (1) $2,500 Service Awards for the six Class Representatives; (2) attorneys' fees not to exceed one-third of the Settlement Fund ($1,833,333.33); (3) reasonably incurred litigation expenses; and (4) Settlement Administration Costs. *Id.* ¶¶ 79, 115–16. Plaintiffs, for their part, agree to release Defendants from any and all claims arising out of or relating to the Data Incident. *Id.* ¶¶ 120–23.

**C. Class Notice**

The Court approved the proposed Notice Program, finding it met the requirements of Federal Rule of Civil Procedure 23 and due process. ECF No. 76, PageID.1247–48. Epiq implemented the Agreements' Notice Program in accordance with the Preliminary Approval Order. Declaration of Cameron R. Azari ("Azari Decl.") ¶ 21, ECF No. 77-3. On June 5, 2026, Epiq received two data files with 1,100,374 identified Settlement Class Member records, which included names and mailing addresses. *Id.* ¶ 22. Epiq deduplicated, rolled-up, and loaded the unique, identified

Settlement Class Member records into its database for this Settlement, resulting in 1,075,803 unique, identified Settlement Class Member records (of these, 15,056 records did not include an associated postal address and were not sent Notice). *Id.*

On July 20, 2026, Epiq commenced sending 1,060,747 Postcard Notices to identified Settlement Class Members with an associated mailing address via first-class mail. *Id.* ¶ 23. Postcard Notices returned as undeliverable were remailed to a new address found using an address lookup service. *Id.* ¶ 25. The Postcard Notice summarized the litigation, the Settlement, and the legal rights of the Class Members. *Id.* ¶¶ 35–36. The Notice also directed recipients to the Settlement Website where they could access important documents, including the Long Form Notice, the Claim Form, the Settlement Agreement, and the Court's Preliminary Approval Order, and where they could submit Claim Forms and review updated deadlines and answers to frequently asked questions. *Id.* Epiq also establish a toll-free phone number available 24 hours per day, 7 days per week, that allowed callers to hear an introductory message and learn more about the Settlement. *Id.* ¶ 29.

The Settlement Agreement provides that Class Members had until September 28, 2026 to opt-out or object to the Settlement, and until October 13, 2026 to submit a Claim Form. *Id.* ¶¶ 31, 33. Epiq reported that, as of October 14, 2026, Epiq had remailed 107,690 Postcard Notices. Azari Supp. Decl. ¶ 12, ECF No. 81-2. In addition, Epiq mailed a Long

Form Notice and Claim Form ("Claim Package") when requested, totaling 310 Claim Packages. *Id.* ¶ 13, 14 Thus, a Postcard Notice was delivered to 1,004,615 of the 1,075,803 Settlement Class Members, reaching approximately 93.3% of the Settlement Class Members. *Id.* ¶ 14. Epiq reports that it has received 53,618 Claim Forms, online and by mail, representing a current claims rate of 4.98%. *Id.* ¶ 21. Epiq asserts that it anticipates this number will rise as it continues to receive Claim forms by USPS delivery, and that it is continuing to complete a quality control review of submitted claims that may be denied as duplicates or otherwise improper. *Id.* And as of October 14, 2026, 19 Class Members have submitted valid opt-out requests, *id.* ¶ 18 (citing Attachment 1 at PageID.1564), and Epiq has received three objections to the Settlement. *Id.* ¶ 19; ECF No. 79, 80, 81-3.

The Settlement Agreement also required Epiq to serve Class Action Fairness Act ("CAFA") Notice packets upon the appropriate state and federal officials pursuant to 28 U.S.C. § 1715, providing notice of the proposed Settlement. Am. S. Ag. ¶¶ 19, 90, ECF No. 77-2. Plaintiffs state that none of the attorneys general and other governmental officials who received the notification of the Settlement filed objections. ECF No. 81, PageID.1529. Moreover, Class Counsel included language in the proposed Final Approval Order that the Attorney General of California requested be included, that "Settlement Class Members are not precluded from addressing, contacting, dealing with, or complying with requests or

inquiries from any governmental authorities relating to the issues raised in this Settlement." *Id.* PageID.1529–30 & fn.5.

**D. The Parties Seek Final Approval of the Class Settlement**

On September 11, 2026, Plaintiffs submitted their Unopposed Motion for Final Approval of Class Action Settlement. ECF No. 77. Although three objections were made to the Settlement Agreement, only two of those objections were filed on the Court's docket, ECF Nos. 79, 80, and the third was mailed to Epiq, ECF No. 81-3. Plaintiffs filed a Response to Objections and Supplemental Brief in Support of Final Approval, ECF No. 81, and on October 27, 2026, filed a supplemental declaration in support of their unopposed motion for attorneys' fees, costs, and service awards, ECF No. 82. The Court conducted the Fairness Hearing on October 28, 2026, at which counsel for Plaintiffs and Defendants appeared and spoke. No objectors appeared.

## II. LEGAL STANDARD

To approve a settlement, a court must: (1) preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement. *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).

Federal Rule of Civil Procedure 23(e) imposes certain "rules for the settlement, dismissal, or compromise of class claims"—including that class-action claims "may be settled, voluntarily dismissed, or

compromised only with the court's approval." *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016) (internal citations omitted). Rule 23 provides that if a proposed settlement or compromise:

> would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A) the class representatives and class counsel have adequately represented the class:
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> (i) the costs, risk, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(3)(3); and
>
> (D) the proposal treats class members equitably relative to each other

Fed. R. Civ. P. 23(e)(2).

The Sixth Circuit Court of Appeals also lists factors to guide the Court in its assessment as to whether the proposed class action settlement

is fair, reasonable, and adequate. They are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Whitlock*, 843 F.3d at 1093 (quoting *Int'l Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

Finally, where the agreement includes the payment of attorneys' fees, the court must assess the reasonableness of that amount. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012) (citing cases finding judicial review of the fee award necessary). "[T]he Court must carefully scrutinize the settlement and the circumstances in which it was reached, if only to ensure that 'the interest of [the] plaintiffs' counsel in counsel's own compensation did not adversely affect the extent of the relief counsel procured for the clients.'" *Id.* (quoting *Cisek v. Nat'l Surface Cleaning, Inc.*, 954 F. Supp. 110, 110–11 (S.D.N.Y. 1997)).

## III. DISCUSSION

### A. Class Certification

Any class certification must satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequate representation. *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 278 (6th Cir. 2018). Further, a class action must fit under at least one of the categories identified by Rule 23(b). In this case, the Court conducted a preliminary

analysis of these issues when it conditionally certified the class under Rule 23(b)(3). ECF No. 76, PageID.1246. The Court now finds that the Class, consisting of over one million individuals, should be certified for settlement purposes.

**1. Rule 23(a) requirements**

The first requirement is that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). That requirement is readily met in this case, as the Class, consisting of 1,075,803 identified Settlement Class Members, is so numerous that joinder of all of them is reasonably impracticable. Azari Supp. Decl. ¶ 10, ECF No. 81-2. *See* Fed. R. Civ. P. 23(a)(1); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (stating that while "there is no strict numerical test," a class in the thousands is sufficiently numerous).

Next, the commonality requirement is satisfied if there are questions of law or fact that are common to the class, the resolution of which will bring a classwide resolution. Fed. R. Civ. P. 23(a)(2). Importantly, "there need be only one common question to certify a class." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013) (citation omitted). Moreover, the "mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007) (quoting *Sterling v.*

*Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1998)). Here there are common issues of fact and law because Plaintiffs' claims turn on the adequacy of Defendants' data security measures in protecting Class Members' Private Information and evidence to resolve that claim does not vary among Settlement Class Members. *See* Compl. ¶ 191, ECF No. 21. *See Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 698 (W.D. Ky. 2024) (finding "there exist common questions of whether Pharm-Save's conduct was negligent or a contractual breach 'and whether it caused a data security breach that resulted in theft of [employees'] data and reasonably prompted [employees'] to take mitigation measures' or expend time to deal with the fallout of the breach.") (citation omitted); *Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758, 765 (E.D. Mich. 2022) (Ludington, J.) (finding commonality requirement met where "Plaintiffs rely on the common question of whether Defendant's data security adequately protected the Class's personal information.").

Third, "the claims or defenses of the representative parties [must be] typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied if the representative's claim "arises from the same [transaction or occurrence as] the claims of other class members, and [they] are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). The typicality element is satisfied here because the Settlement Class's claims arise from the same course of conduct and the Plaintiffs' interests are aligned with the Settlement Class

Members because they were all sent a notice letter informing them that their Private Information may have been compromised in the Data Incident and they are therefore impacted by the allegedly inadequate data security. Compl. ¶ 192, ECF No. 21. *See Dover v. Yanfeng US Auto. Interior Sys. I LLC*, No. 2:20-CV-11643, 2023 WL 2309762, at *4 (E.D. Mich. Mar. 1, 2023) (finding typicality satisfied where the claims arise from the same course of conduct based on the same legal theories); *Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-cv-11404, 2023 WL 5500832, at *3 (E.D. Mich. Aug. 25, 2023) (Ludington, J.) (finding typicality element satisfied in data breach case because the claims of Plaintiffs and the Class "arise from the same conduct of Defendant and resulted in the same disclosure of [private information].").

And finally, the Class Representatives must fairly and adequately protect a class's interest. Fed. R. Civ. P. 23(a)(4). "Class representatives adequately represent the rest of the class when (1) they share common interests with the absent class members, and (2) vigorously 'prosecute the interests of the class through qualified counsel.'" *In re Cinfed Fed. Credit Union Data Breach Litig.*, No. 1:23-cv-776, 2025 WL 1637686, at *6 (S.D. Ohio June 10, 2025) (citation omitted). The named Plaintiffs in this case have common interests with other Class Members because they all have claims arising from the Data Incident that impacted their Private Information, and their claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a

whole. The Plaintiffs have also diligently and actively engaged in protecting the Class Members' interests, including by assisting Class Counsel during the investigation, prosecution, and mediation of the Class Claims. Moreover, Class Counsel are highly experienced class action litigators and have actively litigated this case and adequately represented the Class, ultimately obtaining a non-reversionary Settlement Fund. Joint Decl. of Class Counsel, ECF No. 77-2.

Accordingly, the Court finds that all the Rule 23(a) factors have been satisfied.

**2. Rule 23(b)(3) requirements**

The Court likewise finds that certification is appropriate under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied here.

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Beattie*, 511 F.3d at 564. To evaluate predominance, the Court must first determine which issues of fact or law are common to the class and then weigh their predominance against individual questions which vary from class member to class member. *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 413 (6th Cir. 2018). Factors relevant to that balancing

test include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; [and] (B) the extent and nature of any litigation concerning the controversy already begun by or against class members." Fed. R. Civ. P. 23(b)(3). Common issues here, including what measures Defendants took to secure the Private Information and Defendants' liability for the Data Incident, predominate and thus resolution of the Settlement Class's claims is suitable for adjudication on a collective basis pursuant to Rule 23(b)(3). *See Daffin*, 458 F.3d 554; *In re Cinfed*, 2025 WL 1637686 at *7.

As for superiority, the Court considers the difficulties of managing a class action, the alternative adjudication methods to a class action, and the nature of the class claims. *See Martin*, 896 F.3d at 415–16. Class action is the superior method of adjudication given the complexity of the issues, costs of engaging experts, and that the value of each individual Class Member's claims may be too low to incentivize most Class Members to litigate their claims individually. Thus, resolution on a class-wide basis is the most efficient method of resolving the claims and will "achieve significant economies of 'time, effort and expense, and promote uniformity of decision.'" *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013) (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's notes to 1966 Amendment) ("Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of

bringing individual actions outweigh the expected recovery."); *see also Daffin*, 458 F.3d at 554.

The Court therefore finds that common questions of fact predominate and that a class action is superior to other adjudication methods. The Court accordingly finally certifies the nationwide class proposed in the Amended Settlement Agreement.

**B. The Notice Program Was the Best Notice Practicable**

Rule 23 further requires that, for any class certified under Rule 23(b)(3), notice to the Settlement Class must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Sixth Circuit has held that "due process requires that notice to the class be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Does 1–2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 900 (6th Cir. 2019) (citations omitted). However, due process does not require every class member receive notice—a notice plan is reasonable if it reaches at least 70% of the class. *See Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *4–5 (S.D. Ohio June 13, 2022) (stating "under Rule 23(c)(2)(B), there is no statutory or due-process requirement that all class members receive actual notice by mail or other means" and that 70–95% notice is "often cited as meeting the requirements of Rule 23(c)(2)(B) and due process.") (citing Federal

Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010), www.fjc.gov/sites/default /files/2012/NotCheck.pdf.). Additionally, the CAFA requires that each Defendant provide notice of a proposed class action settlement to "appropriate" federal and state officials. *See* 28 U.S.C. § 1715.

As discussed *supra*, Epiq identified 1,075,803 Settlement Class Members and, as of October 14, 2026, delivered 1,004,615 Postcard Notices. As a result, Epiq estimates that 93.3% of the Settlement Class Members received the Postcard Notice. Azari Supp. Decl. ¶ 14, ECF No. 81-2. As in *Shy*, "[t]his goes well beyond the 70-95% notice that is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process." *Shy*, 2022 WL 2125574, at *5. The Postcard Notice clearly and concisely summarized the Settlement and the legal rights of the Settlement Class Members and also directed them to the Settlement Website where they could access the Long Form Notice and additional information about the Settlement. Azari Supp. Decl. ¶ 11, ECF No. 81-2. Indeed, a Long Form Notice and Claim Form were mailed to 310 persons who requested one from Epiq. And Epiq also served CAFA notices on the appropriate federal and state officials, and none filed objections.

Epiq maintains a Settlement Website (www.DoximDataSecuritySettlement.com) available 24 hours a day, 7 days per week, which includes the Settlement Agreement, Preliminary Approval Order, Long Form Notice, Claim Form, and other case-related documents, relevant dates,

answers to frequently asked questions, and instructions for how Settlement Class Members could opt-out from or object to the Settlement prior to the deadlines. *Id.* ¶ 15. Epiq also maintained a toll-free telephone number (1-877-318-7817) and a postal mailing address and email address, to allow Settlement Class Members to request additional information or ask questions.

The Court finds that this Notice Program constitutes the best notice practicable under the circumstances and is reasonably calculated to provide the Class Members with due process, as required by Rule 23.

**C. The Settlement Agreement is Fair, Adequate, and Reasonable and Merits Final Approval**

Pursuant to Rule 23(e), the Court may approve this Settlement if it determines that it is "fair, reasonable and adequate." The determination of whether to grant final approval for the Settlement is left to the sound discretion of the Court. *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 778 (N.D. Ohio 2010) (citing *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990)). The Court finds, considering the Rule 23(e) and Sixth Circuit factors identified *supra*, that Plaintiffs have established that the proposed Settlement Agreement is fair, adequate and reasonable.

**1. Adequacy of representation**

Plaintiffs have established that the Class Representatives and Class Counsel have adequately represented the Settlement Class. The Class Representatives hold claims typical of the Settlement Class members and

actively participated in the litigation, assisted Class Counsel with the investigation of their claims, aided in drafting and reviewing their respective complaints, and examined and ultimately approved the Class Complaint. Joint Decl. ¶ 26, ECF No. 77-2. In addition, the Class Representatives preserved documents they would need to assist Defendants in discovery, and each Plaintiff was consulted and remained actively engaged throughout the settlement process, including providing additional information ahead of the formal mediation. *Id. See UAW*, 497 F.3d at 626 (class representatives are adequate if they "will vigorously prosecute the interests of the class through qualified counsel" and "are part of the class and possess the same interest and suffer the same injury as class members.").

And Class Counsel has extensive experience in handling class action cases, including consumer privacy cases, and have vigorously prosecuted the interests of the Class, fully investigating the facts and legal claims, and securing a favorable recovery for the Class. Joint Decl. ¶¶ 18–24, ECF No. 77-2. Class Counsel thoroughly investigated and analyzed the claims, fully briefed Defendants' motions to dismiss, engaged in informal discovery sufficient to assess the strengths and weaknesses of each Party's position, and consulted with data security and damages experts, enabling them to understand the evidence related to central questions in this case and preparing them for well-informed settlement negotiations *Id.* This factor warrants approval of the Settlement.

### 2. Arm's length negotiations and risk of fraud or collusion

Next, the Settlement here was reached at arm's length after a full-day mediation between experienced attorneys and before an experienced mediator and there is no evidence of a risk of fraud or collusion. Courts consistently approve class action settlements achieved through arms-length negotiations, particularly if an independent mediator participated in those negotiations. *See Strano v. Kiplinger Washington Eds., Inc.*, 649 F. Supp. 3d 546, 558 (E.D. Mich. 2023) (Ludington, J.) (finding this factor satisfied when the parties negotiated the settlement agreement at arm's length through a neutral mediator and there is no evidence of fraud or collusion); *Hillson v. Kelly Servs. Inc.*, No. 2:15-CV-10803, 2017 WL 279814, at *6 (E.D. Mich. Jan. 23, 2017) (Michelson, J.) (finding that settlement agreement was negotiated at arm's length because procedural history reflected non-collusive negotiations, informal and formal discovery, and multiple mediation sessions). And courts in this District presume the absence of fraud or collusion unless there is evidence to the contrary. *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. Nov. 1, 2006) (Hood, J.). This factor weighs in favor of final approval.

### 3. Complexity, expense, and likely duration of litigation

"Most class actions are inherently complex, and settlement avoids the costs, delays and multitude of other problems associated with them." *Shy*, 2022 WL 2125574, at *6 (citation omitted); *see also New York State*

*Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016) (Parker, J.) (stating settlement "provides an immediate, significant, and certain recovery for Class members"). And as another court observed in finally approving a settlement with similar class relief, "[d]ata breach litigation is evolving; there is no guarantee of the ultimate result … [they] are particularly risky, expensive, and complex." *Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021).

This litigation is complex. The parties had already fully briefed Defendants' three motions to dismiss. Absent settlement, the parties would have proceeded to oral argument on those motions, and assuming Plaintiffs prevailed, the parties would be required to engage in significant fact and expert discovery, complex dispositive motion practice for class certification and summary judgment, and ultimately trial preparation, possibly followed by appeals. The Court finds that the Settlement Agreement provides a greater benefit to the Class Members than the risk, expense, and duration of continued litigation, and that this weighs in favor of final approval.

**4. The amount of discovery engaged in by the parties**

Generally, the parties must engage in "sufficient and substantial discovery, both formal and informal, that allows them to understand their respective positions." *Shy*, 2022 WL 2125574, at *6. However, the "absence of formal discovery is not an obstacle to approving a settlement, so long as the parties have adequate information to evaluate their

positions." *Dover*, 2023 WL 2309762, at *3 (citation omitted); *see also Carr v. Guardian Healthcare Holdings, Inc.*, No. 2:20-cv-6292, 2022 WL 501206, at *5 (S.D. Ohio Jan. 19, 2022) (courts consider "not only court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced."). Class Counsel here undertook considerable efforts to investigate the claims prior to filing the initial complaints in this case and engaged in significant pre-mediation discovery, exchanging the same information that would have been produced in formal discovery related to issues of class certification and summary judgment, to permit Plaintiffs and Class Counsel to make an informed judgment regarding the fairness and adequacy of the Settlement. Joint Decl. ¶¶ 5, 9–10, ECF No. 77-2. Accordingly, this factor weighs in favor of final approval.

**5. Likelihood of success on the merits**

The likelihood of success on the merits is the "most important of the factors to be considered" by the Court. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). The Court must "weigh[ ] the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 631. And courts must also determine "whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Id.* at 632.

Here, while Plaintiffs contend that they believe their claims are meritorious and that they would ultimately prevail at trial, they acknowledge that risks are inherent in litigation, and especially in complex class actions such as this one. Joint Decl. ¶ 17, ECF No. 77-2. Class Counsel believes that Defendants would vigorously argue their Motions to Dismiss, contest class certification, and move for summary judgment if the case were to continue. Plaintiffs acknowledge that some recent decisions in this District have been decided against the plaintiffs in other data breach actions. *See* ECF No. 77, PageID.1288 (citing *In re Grede Holdings LLC Data Breach Litig.*, No. 25-cv-10831, 2026 WL 396292 (E.D. Mich. Feb. 12, 2026) (White, J.); *In re A-Line Staffing Sols. Data Sec. Incident Litig.*, No. 24-cv-11917, 2026 WL 1480273 (E.D. Mich. May 27, 2026) (White, J.)). Considering the risks here of proceeding with litigation, a reasonable settlement is a prudent course. The Settlement here ensures a non-reversionary common fund of $5,500,000, which the Court finds is fair and reasonable relief when weighed against the risks of litigation. The certainty provided by the monetary settlement in this case outweighs the risks of Plaintiffs potentially receiving nothing if the matter were to proceed to trial.

**6. Opinions of class counsel and class representatives**

"[W]hen experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference." *Shy*, 2022

WL 2125574, at *7 (quoting *Williams*, 720 F.2d at 922 (a district court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs" and that deference "should correspond to the amount of discovery completed and the character of the evidence uncovered")); *see also Borders v. Alternate Sol. Health Network, LLC*, No. 2:20-CV-1273, 2021 WL 4868512, at *3 (S.D. Ohio May 17, 2021) ("By agreeing to this settlement, counsel for both parties have indicated their shared belief that the Settlement Agreement is fair, reasonable, and adequate," and "[t]he Court gives great weight to the beliefs of experienced counsel"). Similarly, courts in the Sixth Circuit defer to the recommendations made by class representatives who support the Settlement. *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014) ("Not insignificantly, the Class Representatives have also approved the Settlement Agreement"), *report and recommendation adopted*, 2014 WL 3543819 (S.D. Ohio July 16, 2014), *aff'd*, 822 F.3d 269 (6th Cir. 2016).

Here, both Class Counsel and the Class Representatives support approval of the Settlement. The parties are represented by highly experienced counsel with class and complex litigation, and the settlement was reached under the guidance of an experienced mediator. This factor weighs in favor of approval.

**7. The reaction of absent class members**

"Although the Court should consider objections to the settlement, the existence of objections does not mean that the settlement is unfair." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1018 (S.D. Ohio 2001). This is because "[a] certain number of ... objections are to be expected in a class action." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (Edmunds, J.). "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1018; *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (finding that 79 objections in a class of nearly 11,000 "tends to support a finding that the settlement is fair."). Further, those objecting to the proposed settlement have a heavy burden of proving the unreasonableness of the settlement. *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1009.

**a. Objections**

Here, out of over one million Class Members, there were only three objections to the Class Action Settlement. Azari Supp. Decl. ¶ 19, ECF No. 81-2. None of the objections raise issues sufficient to support denying final approval. *See Thomsen*, 2023 WL 3437802, at *2 (noting that "only three objections ... 'indicates that the settlement is fair, reasonable and adequate in a class of this size.' ") (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 675 (S.D. Ohio 2007)). Objections were submitted by (1) Julie

Kakes, ECF No. 81-1; (2) Casimir Wondolkowski III, ECF No. 79; and (3) Shawn Matthew Beardslee, ECF No. 80. None of the objectors elected to appear at the Final Fairness Hearing. The Court will address each Objector in turn.

Julie Kakes Objection

Julie Kakes's July 29, 2026 Objection states "I am objecting to the Doxim settlement as I do not want to be bound by the initial settlement. I want to have the option to be compensated if damages incurred are beyond the initial settlement amounts." ECF No. 81-3, PageID.1567. Kakes sent additional correspondence on September 5, 2026 stating "[t]o clarify, I want to be part of the initial settlement, but I want to keep the option open to seek additional damages caused by this data breech [sic] if such occurs." *Id.* PageID.1570. The Settlement Administrator reported that Kakes submitted a Claim Form. Azari Supp. Decl. ¶ 19, ECF No. 81-2.

This general Objection will be overruled because it fails to provide specific grounds for the objection, as required by the Amended Settlement Agreement. Am. S. Ag. ¶ 97, ECF No. 77-2. To the extent Kakes believes she is entitled to a larger settlement amount, including the ability to be compensated for future damages, the Notice and Amended Settlement Agreement clearly explained that she could have exercised her right to opt out of the Settlement to preserve her individual claims against Defendants. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No.

16-MD-02752, 2020 WL 4212811, at *15 (N.D. Cal. July 22, 2020) ("[T]o the extent that Settlement Class Members suffered unique damages of this nature, the correct response is to opt out from the Settlement Class in order to pursue those damages on an individual basis."). As the Long Form Notice explains:

> If you are a member of the Settlement Class and want to keep any right you may have to sue or continue to sue the Released Parties on your own about the legal claims in this lawsuit or the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from— or "opting-out" of—the Settlement.

ECF No. 72-2, PageID.1047. Kakes affirmatively chose to be part of the Settlement Class by submitting a Claim, and her general objection to the Settlement is overruled. Kakes cannot simultaneously participate in this Settlement and retain the right to sue for additional damages.

Wondolkowski Objection

Casimir Wondolkowski III asserts four grounds for objection: (1) regarding the allocation of the remaining funds; (2) inadequate compensation for financial harm; (3) excessive attorneys' fees; and (4) insufficient credit monitoring. ECF No. 79. These objections are not sufficient to deny Final Approval of the Settlement or the requested attorneys' fees and expenses.

First, Wondolkowski challenges the Amended Settlement Agreements' *cy pres* provision which provides that "[i]n the event there

are funds remaining from uncashed checks in the Settlement Fund 20 days following the 120-day check negotiation period, all remaining funds shall be distributed to an appropriate mutually agreeable *cy pres* recipient to be approved by the Court." Am. S. Ag. ¶ 119, ECF No. 77-2. The parties propose the Michigan State Bar Foundation as the *cy pres* recipient. *Id.* Wondolkowski argues only that "[t]he remaining funds should go to us[.]" ECF No. 79. However, as Plaintiffs explain in their Response and explained again at the hearing, the remaining funds that would go to the *cy pres* recipient would *only* derive from those checks where Settlement Class Members made a claim for a cash payment but then did not negotiate *a physical check*. ECF No. 81, PageID.1535 (noting that the Claim Form allows for electronic payment by three digital payment options and also via direct deposit to one's checking account as well as by physical check). Plaintiffs state that given the relatively small anticipated amount of uncashed *physical checks*, and the size of the Settlement Class, it does not make sense to attempt to redistribute the unclaimed funds divided among the parties via a second round distribution. *Id.* The Court agrees that this makes sense, and that the Michigan State Bar Foundation is an adequate *cy pres* recipient and "the 'next best' use of the remaining settlement monies in this case." *See Lessard v. City of Allen Park*, 470 F. Supp. 2d 781, 883–84 (E.D. Mich. 2007) (Feikens, J.); *see also In re Belle Tire Distribs., Inc. Data Breach Litig.*, No. 2:24-cv-12966, 2026 WL 2597817, at *3 (E.D. Mich. Sept. 2, 2026) (Leitman, J.) (stating, in a

data breach case, that "any remaining funds shall be distributed to the Michigan State Bar Foundation, which the Court approves as the *cy pres* recipient.").

Wondolkowski next objects that the Settlement benefits do not adequately compensate for "the actual or potential future long-term financial damages, identity theft risks, and out-of-pocket mitigation costs incurred by class members." ECF No. 79. However, as explained above, to the extent Wondolkowski believes he has suffered or expects to suffer extraordinary or unique damages, he could have opted out of the Settlement and retained his rights to pursue those claims. *See Angus v. Flagstar Bank, N.A.*, No. 2:21-cv-10657, 2026 WL 2984987, at *4 (E.D. Mich. Oct. 5, 2026) (Leitman, J.) (recognizing that an objector's concerns with the possible long-term risks associated with the exposure of financial information "appear to be highly individualized to [the objector] and not representative of those faced by the vast majority of class members" and "[t]hus, his more proper course would be to opt-out of the Settlement and retain his individual right to pursue those claims, a course he chose not to pursue."). Further, courts have rejected objections premised on the assertion that the settlement recovery should have been "more" or "better." *See, e.g., Hughes v. Microsoft Corp.*, No. C98-1646C, C93-0178C, 2001 WL 34089697, at *10 (W.D. Wash. Mar. 26, 2001) ("An objection that the settlement 'could have been better ... does not mean the settlement presented [is] not fair, reasonable or adequate.'") (quoting *Hanlon v.*

*Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir.1998)). "Because '[s]ettlement is the offspring of compromise' the appropriate inquiry for a court reviewing a settlement pursuant to Rule 23(e) is 'not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.'" *Id.* As discussed above, the Court finds that the overall amount of the settlement is fair and reasonable.

Wondolkowski also broadly objects that the requested attorneys' fees and expenses "disproportionately diminish the total fund available for direct distribution." ECF No. 79. However, as discussed *infra*, the Court finds that Class Counsel's request for one-third of the non-reversionary Settlement Fund and reasonably-incurred litigation expenses is appropriate and within the range of fees widely and generally approved by courts in cases such as this.

Finally, Wondolkowski broadly objects that the provided credit monitoring provided by the Settlement is inadequate in duration and scope. ECF No. 79. He fails to provide any factual support for his objection. The Settlement Agreement provides for one year of one credit bureau "comprehensive dark web monitoring, high risk transaction monitoring, with real-time alerts, security freeze, and $1 million in insurance coverage." Am. S. Ag. ¶ 84(c), ECF No. 77-2. Again, any settlement is a result of compromise, and while Wondolkowski may desire longer or more fulsome credit monitoring, the services provided by the Settlement

Agreement are well within the range of adequate, and Wondolkowski's objections are overruled.

Shawn Matthew Beardslee

Finally, Shawn Matthew Beardslee asserts seven objections: (1) that the negotiations were not at arms-length; (2) the per-member payment is unreasonably low; (3) attorneys' fees are excessive; (4) an unfair distribution of funds; (5) failure of due process to notify all impacted; (6) a general discussion of the terms "doxing" or "doxxing"; and (7) the settlement does not cover all impacted information. ECF No. 80. Beardslee's objections are not sufficient to deny Final Approval of the Settlement or the requested attorneys' fees and expenses.

First, Beardslee's second, third, and fourth objections, attacking the value of the settlement, requested attorney's fees, and credit monitoring, have been addressed above, fail to sufficiently challenge the fairness and adequacy of the Settlement, and are denied.

Beardslees's objection that the negotiations were not at arms-length is readily rejected. He cites to a separate data breach settlement and compares the alleged annual reserves of that company and Defendant Doxim. ECF No. 80. However, comparing the alleged net worth of two companies in no way takes account of the nature of the litigation involved in the two cases, the type of data at issue, the size of the class, the insurance available, the profits and cash on hand, or defenses available to the defendants in the case. Nor does a company's annual reserves say

anything about whether the negotiations here were conducted at arm's length. This objection is rejected.

Beardslee contends that there was a lack of due process because his wife and two minor children "should be settlement class members" because he contends their personal information was impacted. ECF No. 80. However, the Settlement Administrator explained that it was provided all contact information for individuals impacted by the Data Incident, including Beardslee, and that Bearslee's wife and minor children were not identified in the Settlement Class Member records. Azari Supp. Decl. ¶¶6–13, 19, ECF No. 81-2. Beardslee fails to provide any documents or other proof that the three family members shared his account, and his objection is denied. Further, as discussed *supra*, due process had been adequately satisfied here by the Notice Program.

Beardslee's next objection merely cites to purported definitions of "doxing" or "doxxing" without articulating a specific objection to the Settlement. It is therefore denied.

Finally, Beardslee objects that the Settlement "does not cover all impacted information" because the "Settlement doesn't account for the fact that the mailing (physical home) address's [sic] of Settlement Class … were released." ECF No. 80. Contrary to this assertion, the Settlement expressly acknowledges that "Private Information" includes addresses. Am. S. Ag. ¶ 63, ECF No. 77-2. Accordingly, Beardslee's objections are overruled.

**b. Requests for exclusion/opt outs**

In addition, the Notice in this case resulted in only 19 valid requests for exclusion from the Settlement. Azari Supp. Decl. ¶ 18, ECF No. 81-2. This favors approval. *See In e Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 997 (N.D. Ohio 2016) (holding that this factor favors approval if only a small number of class members opt out); *In re Cardizem*, 218 F.R.D. at 527 ("That the overwhelming majority of class members have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is 'fair, reasonable, and adequate.'").

Plaintiffs further represent in their Response that none of the attorneys general and other governmental officials who received notification of the Settlement pursuant to CAFA have filed objections. ECF No. 81, PageID.1529. Accordingly, considering the reactions of Class Members and other interested persons, this factor weighs in favor of approval.

**8. The public interest**

There is a "strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Déjà Vu Servs.*, 925 F.3d at 899 (citation modified); *Whitlock*, 843 F.3d at 1094 (noting the "particularly muscular presumption in favor of settlement in class-action litigation") (citation modified). Further, "the

federal policy favor[s] settlement of class actions." *UAW*, 497 F.3d at 632. The Court finds it is in the public interest to pursue this action through settlement to promote the efficient administration of justice.

Accordingly, for all the reasons discussed above, the Court **APPROVES** the Parties' Settlement finding it to be fair, reasonable, adequate, and in the best interests of the Settlement Class in all respects and as to all parties. The Court will therefore **GRANT** Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement. ECF No. 77.

### C. Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs and Service Awards

Plaintiffs have filed an Unopposed Motion for Attorneys' Fees, Costs, and Service Awards, asking the Court to authorize payments of (1) $1,833,333.33, or one-third of the $5,500,000.00 non-reversionary common fund, in attorneys' fees, (2) up to $50,000 in reasonable litigation costs, and (3) Service Awards of $2,500 for each of the six named Plaintiffs. ECF No. 78. Plaintiffs filed a Supplemental Declaration the day before the final fairness hearing stating that the total amount of reasonable litigation costs incurred by Class Counsel, for which they are seeking reimbursement, is $23,194.96. ECF No. 82.

#### 1. Attorneys' fees and costs

In awarding attorney's fees, the Court must ensure that "counsel is fairly compensated for the amount of work done as well as for the results

achieved." *Gascho*, 822 F.3d at 279 (internal citations omitted). The amount of work done and the results achieved may run in tension with one another. *Id.* One method of calculating attorney's fees, the "lodestar" method, takes account of the amount of work done and involves the Court multiplying the number of hours "reasonably expended" on the litigation by a reasonable hourly rate," then making adjustments for case-specific considerations. *Id.* A second method, the percentage-of-the-fund method, focuses more on the results achieved and requires the Court to determine an appropriate percentage of funds to be awarded to counsel. *Id.* The Court has discretion to select the method of calculating fees in a case. *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009). In common fund cases, whichever method is used, the award of attorneys' fees need only "be reasonable under the circumstances." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). And under Rule 23(h), the Court may also award reasonable nontaxable costs.

The Court concludes that the percentage-of-the-fund method is appropriate for evaluating the reasonableness of the fees requested in this case. "This method of awarding attorneys' fees is preferred in this District because it conserves judicial resources and aligns the interests of class counsel and the class members." *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2020 WL 5653257, at *2 (E.D. Mich. Sept. 23, 2020) (Cox, J.) (collecting cases); *see also Rawlings*, 9 F.3d at 516 ("The percentage of the fund method has a number of advantages: it is easy to

calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation."). The Sixth Circuit has articulated six factors to guide the Court's consideration in determining whether a proposed fee is reasonable: "1) the value of the benefits rendered to the [class], 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis [(the lodestar cross-check)], 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides." *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974); *see also Moulton*, 581 F.3d at 352 (quoting *Bowling v. Pfizer Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)).

Here, Class Counsel request attorneys' fees in the amount of one-third of the Settlement Fund, or $1,833,333.33, and reasonably incurred litigation costs of $23,194.96. ECF Nos. 78, 82. Courts in this District have long awarded percentage-based fees of 33% or more in common fund cases, including in data privacy cases such as this. *See, e.g., In re Wright & Filippis, LLC Data Sec. Breach Litig.*, No. 2:22-cv-12908, 2024 WL 3083437, at *1 (E.D. Mich. June 20, 2024) (Cox, J.) (approving fee for one-third of the common fund in a data privacy case); *Kain v. Economist Newspaper NA, Inc.*, No. 21-cv-11807, 2023 WL 2541318 (E.D. Mich. Mar. 16, 2023) (Leitman, J.) (awarding 35% of common fund, or $3,325,000, for

attorney fees, including litigation expenses); *Dover*, 2023 WL 2309762, at *5 ("The 33.33% fee award [class counsel] have requested in addition to reimbursement of expenses falls within the range of percentage fees that have been previously approved in complex class actions."); *BleachTech LLC v. United Parcel Serv., Inc.*, No. 14-12719, 2022 WL 2900796, at *2 (E.D. Mich. July 20, 2022) (Hood, J.) (finding class counsel's request for 33 1/3% of the common fund "well within the benchmark range and in line with what is often awarded in this Circuit"); *Simpson v. Citizens Bank*, No. 12-10267, 2014 WL 12738263, at *6 (E.D. Mich. Jan. 31, 2014) (Hood, J.) ("Class Counsel's request for 33% of the common fund created by their efforts is well within the benchmark range and in line what is often awarded in this Circuit.").

The Court further finds that the *Ramey* factors favor approval of Plaintiffs' requested fee and costs award. First, the value of the benefit rendered to the Settlement Class supports the fee and cost request. This factor is "widely regard[ed]" as the "most important" of the six *Ramey* factors. *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 764 (S.D. Ohio 2007). The *Ramey* court evaluated this factor in terms of the number of individuals affected by the underlying allegations and the total settlement reached. *See Ramey*, 508 F.2d at 1196–98; *In re Cardinal Health*, 528 F. Supp. 2d at 765 (evaluating, in its analysis of the first *Ramey* factor, the total settlement amount and noting its accomplishment due to being one of the largest settlements of its type ever reached in the

Sixth Circuit). The Settlement here provides for a $5,500,000 non-reversionary Settlement Fund awarded to over 53,000 Settlement Class Members and provides for cash payments and credit monitoring to claimants. The Court finds that Class Counsel have secured a valuable benefit for the Settlement Class, and this factor weighs in favor of approval.

The Court further notes that Class Counsel undertook the representation here on a contingent basis, funding all of the significant litigation costs while facing a risk of non-payment in pursuing these claims. They have received no compensation in the more than two years this litigation has been pending, attest that they incurred significant out-of-pocket expenses litigating for the benefit of the Class, and that they will expend substantial additional time going forward working on behalf of the Settlement Class. Class Counsel conducted a thorough investigation into the relevant facts and legal issues and invested significant time, effort, and resources to the litigation, including participating in informal discovery, responding to dispositive motions, and preparing for and participating in a full-day mediation, all without compensation. Joint Decl. ¶¶ 19, 22–23, ECF No. 77-2. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 503–04 (E.D. Mich. 2008) (Rosen, J.) (granting fee request where class counsel "prosecuted this action entirely on a contingent basis, knowing that it possibly could last for four or five years, require the expenditure of

thousands of attorney hours and millions of dollars in expenses and ultimately result in a loss at summary judgment or at trial.”).

The Court must also consider society’s stake in rewarding attorneys who produce a common benefit for class members in order to maintain an incentive to others. *See In re Cardizem*, 218 F.R.D. at 534 (“Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions like this benefits society.”); *In re Telectronics*, 137 F. Supp. 2d at 1042–43 (“Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources.”). Class Counsel litigated this case for over two years on behalf of a significant class, on a contingent fee basis. Rewarding Class Counsel under such circumstances furthers society’s interests.

The complexity of this litigation also supports the reasonableness of fee and costs request. “Generally, [m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.” *Ganci v. MBF Inspection Servs., Inc.*, No. No. 2:15-cv-2959, 2019 WL 6485159, at *3 (S.D. Ohio Dec. 3, 2019) (citations omitted). This case required extensive factual investigation and legal analysis, including analysis of the Data Incident, and review of the Defendants’ privacy policies, remedial steps, and financial condition. Joint Decl. ¶ 19, ECF No. 77-2. Class Counsel was also required to consult with liability and damages experts. *Id.* Settling the case now will result

in the saving of time and money to the Parties and serve judicial economy. Here, the difficulty Plaintiffs and Class Members would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process provide justifications for the Court's approval of the proposed Settlement and attorney fee award. This factor therefore weighs in favor of approval.

The professional skill and standing of counsel also supports the reasonableness of the fee and cost request. Class Counsels' law firms have national standing and extensive experience in litigating complex class actions, and they conducted extensive work resulting in a positive and beneficial result for the Settlement Class. The Defendants were also represented by experienced and successful law firms.

Finally, as to the value of the services on an hourly basis factor, "[g]iven the preference in the Sixth Circuit for using the percentage-of-the-fund method to evaluate attorneys' fees rather than the lodestar method in common fund cases, consideration of this [ ] factor—which courts sometimes refer to as a 'lodestar crosscheck'— is not required." *In re E. Palestine Train Derailment*, No. 4:23CV0242, 2024 WL 4370003, at *11 (N.D. Ohio Sept. 27, 2024) (citations omitted); *see also Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 501 (6th Cir. 2011) (stating that a lodestar crosscheck "was *optional.*") (emphasis in original); *Arp v. Hohla & Wyss Enters., LLC*, No. 3:18-cv-119, 2020 WL 6498956, at *8 (S.D. Ohio Nov. 5, 2020) ("[A] lodestar cross-check is not required."); *In*

*re Delphi*, 248 F.R.D. at 503 (applying percentage-of-the-fund method without addressing the "value of the services on an hourly basis"); *Fournier v. PFS Inv., Inc.*, 997 F. Supp. 828, 832–33 (E.D. Mich. 1998) (Gilmore, J.) (same). Even when courts do consider this factor, "[f]or purposes of the lodestar cross-check, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'" *In re Flint Water Cases*, 583 F. Supp. 3d 911, 941 (E.D. Mich. 2022) (Levy, J.) (quoting *Ramey*, 508 F.2d at 1196).

Class Counsel in this case have not provided information regarding their hours expended or their fees charged so that the Court could determine the lodestar. The Court nevertheless finds that the percentage-of-the-fund method of calculating fees is reasonable and appropriate here, as discussed above.

Accordingly, considering all the factors, the Court will **GRANT** Plaintiffs' motion with respect to their request for attorneys' fees in the amount of 33% of the Settlement Fund.

**2. Litigation costs**

Class Counsel request reimbursement for litigation costs incurred in the filing and prosecution of the cases related to the present Action. ECF No. 78, PageID.1505. Plaintiffs seek recovery of litigation costs in the amount of $23,194.96 for: "mediation with Jill Sperber; filing fees for the six actions brought to prosecute this litigation; service of process for each of the six cases and on multiple Defendants for each case; expert fees

to assist with addressing Defendants' liability and damages; travel to court; and over two years of administrative costs." Joint Decl. ¶ 28, ECF No. 77-2; Supplemental Declaration of Gregory A. Mitchell ¶¶ 3–5, ECF No. 82. "Under the common fund doctrine, "class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634–35 (W.D. Ky. 2006) (citing *In re Cardizem*, 218 F.R.D. at 535).

Upon review of the declaration submitted by Plaintiffs in support of this request, and the argument of counsel at the hearing, the Court finds the requested amount to be fair and reasonable. The costs are reasonable and the type routinely billed by attorneys to paying clients in similar cases and thus should be reimbursed out of the Settlement Fund. *See, e.g., Humphrey v. Stored Value Cards*, No. 1:18-cv-01050, 2021 WL 110786, at *7 (N.D. Ohio Jan. 12, 2021) (approving litigation costs for expenses including "photocopies, database maintenance and online legal research, filing fees, transcripts, transportation, and couriers"); *New York State Teachers' Retirement Sys.*, 315 F.R.D. at 244–45 (approving class counsel's request for reimbursement of expenses for retention of experts and consultants, online legal and factual research, court fees, out-of-town

travel, copying costs, and postage and delivery). The Court therefore approves the reimbursement of costs and expenses to Class Counsel in the amount of $23,194.96.

**3. Service awards**

Plaintiffs have additionally requested "service" awards of $2,500 from the Settlement Fund to each of the Named Plaintiff Class Representatives in this action: Jonathan McKinley, Bruce Narolis, Rose McNichols, Alex Poplawski, Brian Satterwhite, and Thomas Wardrop.

Courts have expressed concerns regarding the propriety of incentive awards, noting the existence of a "danger that the parties and counsel will bargain away the interests of unnamed class members ... to maximize their own." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013). And the propriety of incentive awards is far from settled; the Sixth Circuit has neither approved of them nor expressly disapproved them. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 311 (6th Cir. 2016). Nonetheless, the Sixth Circuit has recognized that "there may be circumstances where incentive awards are appropriate," *Hadix v. Johnson*, 322 F.3d 895, 897–98 (6th Cir. 2003), and this Court has recognized that "[s]uch service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Daoust v. Maru Rest. LLC*, No. 17-cv-13879, 2019

WL 2866490, at *6 (E.D. Mich. July 3, 2019). *See also Shane Grp. Inc. v. Blue Cross Blue Shield of Mich.*, 833 F. App'x 430, 431 (6th Cir. 2021) (affirming service awards because "those payments correlate to the substantial amount of time that the named plaintiffs actually spent producing documents and otherwise advancing the litigation of the case.").

According to Class Counsels' Joint Declaration, the six Class Representatives assisted Class Counsel with the investigation of their claims, aided in drafting and reviewing their respective complaints, and examined and ultimately approved the Class Action Complaint. Joint Decl. ¶ 26, ECF No. 77-2. The Class Representatives further preserved documents they would need to render to Defendants in discovery, and each one was consulted and remained actively engaged throughout the settlement process, including providing additional information before the formal mediation. *Id.*

The Court finds that service awards are appropriate in this case to recognize the efforts of the Class Representative Plaintiffs expended in this case on behalf of the Class. Moreover, awards of $2,500 per Plaintiff are comparable to or lower than awards in other class settlements. *See, e.g., Daoust*, 2019 WL 2866490, at *6 (awarding $5,000); *Arp*, 2020 WL 6498956, at *8 (awarding $10,000); *Persad v. Ford Motor Co.*, 2:17-cv-12599, 2021 WL 6198059, at *2 (E.D. Mich. Dec. 30, 2021) (awarding a total of $30,000 to three plaintiffs). Accordingly, the Court **GRANTS**

Plaintiffs' motion and awards $2,500 Service Awards to each Class Representative, to be paid out of the Settlement Fund.

## IV. CONCLUSION

For the reasons set forth above, the Court unconditionally certifies the Settlement Class, approves the Settlement, allows the reimbursement of fees and expenses from the Settlement Fund, and approves the Service Awards to the Named Plaintiffs.

Accordingly, it is **ORDERED** that both Plaintiffs' Unopposed Motion for Final Approval of the Class Action Settlement, ECF No. 77, and Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, and Service Awards, ECF No. 78, are **GRANTED**.

Specifically, the Court **ORDERS**:

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and personal jurisdiction over all Parties to the Action, including all Settlement Class Members.

2. This Final Approval Order incorporates, by reference as if fully set forth herein, the definitions from Section II of the Settlement Agreement and Releases (attached as Exhibit C to the Motion for Final Approval at ECF No. 77-2).

3. The Notice provided to the Settlement Class was the best notice practicable under the circumstances and constituted due and sufficient notice of the proceedings and matters set forth therein to all persons entitled to notice. The Notice and Notice Program fully satisfied the

requirements of due process, Federal Rule of Civil Procedure 23, and all other applicable law and rules. The Claim Process is also fair, and the Claim Form is easily understandable.

4. The Settlement is in all respects fair, reasonable, and adequate, after considering all of the Federal Rule of Civil Procedure 23(e)(2) factors and the Sixth Circuit's traditional factors in *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. ("UAW") v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007), highlighted by evidence that: (a) there was no fraud or collusion in negotiating the Settlement with the assistance of a qualified mediator; (b) the complexity, expense, and likely duration of the litigation; (c) the stage of the proceedings and amount of discovery completed; (d) the risks of establishing liability, damages, and maintaining the class action through trial; (e) the reaction of the Settlement Class to the Settlement; (f) Class Counsel's and the Class Representatives' supporting opinions about the Settlement; and (g) the public interest in approving the Settlement. The Settlement was made based on a record that is sufficiently developed and complete to have enabled the Parties to adequately evaluate and consider their positions.

5. In finding the Settlement fair, reasonable, and adequate, the Court has also considered the opinion of competent counsel, as well as the indication of an overwhelming positive reaction from the Settlement Class given the total number of Claims made, that there were three objections to the Settlement filed and nineteen opt-outs submitted. A list of the

individuals who have opted-out of the Settlement is filed under seal, to protect the names of these individuals who are not parties to this litigation, at ECF No. 83. The individuals set forth in ECF No. 83 will not be bound by the Agreement and Releases contained therein.

6. Settlement Class Members had the opportunity to enter an appearance in the Action, individually or through their own counsel. Settlement Class Members also had the opportunity to object to the Settlement and the attorneys' fees and costs award and to appear at the Final Approval Hearing and show cause, if any, why the Settlement should not be approved as fair, reasonable, and adequate for the Settlement Class, why a final judgment should not be entered thereon, why the Settlement should not be approved, or why the attorneys' fees and costs award or Service Awards should not be granted, as set forth in the Court's Preliminary Approval Order. There were three timely objections filed (ECF Nos. 79, 80, 81-3). The Court has considered the foregoing objections to the Settlement and concludes, as stated *supra*, that such objections are without merit and overruled.

7. Based on the information presented to the Court, the Claims Process has proceeded consistent with the Agreement and the Preliminary Approval Order. All Settlement Class Members who submitted Valid Claims shall receive their Settlement Class Member Benefits pursuant to the Settlement's terms. All Settlement Class Members who did not submit a Claim, or for whom the Claim is

determined to be invalid, shall still be bound by the terms of the Settlement and Releases therein.

8. The allocation and distribution plan for Settlement Class Member Benefits proposed by the Parties in the Agreement is fair, reasonable, and adequate.

9. The Class Representatives and Class Counsel have fairly and adequately represented and will continue to adequately represent and protect the interests of Settlement Class Members in connection with the Settlement.

10. Because the Court grants Final Approval of the Settlement set forth in the Agreement as fair, reasonable, and adequate, the Court authorizes and directs implementation of all terms and provisions of the Settlement.

11. All Parties to this Action, including all Settlement Class Members, are bound by the Settlement as set forth in the Agreement and this Order.

12. The appointment of Plaintiffs Jonathan McKinley, Bruce Narolis, Rose McNichols, Alex Poplawski, Brian Satterwhite, and Thomas Wardrop as Class Representatives is affirmed.

13. The appointment of E. Powell Miller of The Miller Law Firm, P.C., Jeff Ostrow of Kopelowitz Ostrow, P.A., Mariya Weekes of Milberg PLLC, and Bryan L. Bleichner of Chestnut Cambronne, P.A. as Class Counsel is affirmed.

14. The Court appointment of Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator is affirmed.

15. The Court affirms its findings that the Settlement Class meets the relevant requirements of Fed. R. Civ. P. 23(a) and (b)(3) for only the purposes of the Settlement in that: (1) the number of members of the Settlement Class is so numerous that joinder is impracticable; (2) there are questions of law and fact common to the members of the Settlement Class; (3) the claims of the Plaintiffs are typical of the claims of the members of the Settlement Class; (4) the Plaintiffs are adequate representatives for the Settlement Class, and have retained experienced and adequate Class Counsel; (5) the questions of law and fact common to the members of the Settlement Class predominate over any questions affecting any individual members of the Settlement Class; and (6) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.

16. Therefore, the Court finally certifies the following Settlement Class:

> All living individuals residing in the United States who were identified by Doxim and who were sent notice by Doxim or Doxim's Credit Union Clients that their Private Information was impacted in the Data Incident.

Excluded from the Settlement Class are: (1) all persons who are directors, officers, and agents of Defendants, or their respective subsidiaries and affiliated companies; (2) governmental entities; (3) the Judge assigned to

the Action, that Judge's immediate family, and Court staff; and (4) all Settlement Class Members who timely and validly opted-out of the Settlement.

17. Judgment shall be, and hereby is, entered dismissing the Action with prejudice.

18. As of the Effective Date, and in exchange for the relief described in the Settlement, the Releasing Parties shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever released, acquitted, relinquished, and completely discharged the Released Parties from any and all Released Claims.

19. In consideration for the Settlement Agreement and the consideration set forth therein, the Releasing Parties hereby release the Released Parties from the Released Claims.

20. If, consistent with the plan of distribution set forth in the Settlement, there are funds remaining in the Settlement Fund 20 days following the 120-day check negotiation period, any remaining funds shall be distributed to the Michigan State Bar Foundation, which the Court approves as the *cy pres* recipient.

21. Pursuant to Federal Rule of Civil Procedure 23(h), settlement Class Counsel is awarded an amount of one-third of the non-reversionary Settlement Fund, or $1,833,333.33 plus reimbursement of reasonable litigation Costs, in the amount of $23,196.96. These payments shall be made out of the Settlement Fund in accordance with the Agreement. Class

Counsel have sole responsibility, within Class Counsel's discretion, to allocate and distribute attorneys' fees among Plaintiffs' counsel. The Court evaluated Class Counsel's request applying the percentage of the common fund method and concludes that amount is within the range of reason, using the factors described in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974), finding evidence of the (1) the strong value of the benefit of the non-reversionary Settlement Fund to the class; (2) society's stake in rewarding attorneys who produce the settlement's benefits, to maintain an incentive to others; (3) that the work was performed on a contingent fee basis; (4) the complexity of this data privacy litigation; (5) the skill and standing of counsel on both sides; and (6) the value of the legal services performed in achieving meaningful benefits for the Class, including options for cash payments and the automatic receipt of credit monitoring.

22. The Class Representatives are awarded Service Awards in the amount of $2,500.00 each. The Service Awards shall be payable out of the Settlement Fund in accordance with the Agreement.

23. Plaintiffs and all Settlement Class Members and Releasing Parties, and persons purporting to act on their behalf, are permanently enjoined from commencing or prosecuting (either directly, representatively, or in any other capacity) any of the Released Claims against any of the Released Parties in any action or proceeding in any court, arbitration forum, or tribunal. Settlement Class Members are not

precluded from addressing, contacting, dealing with, or complying with requests or inquiries from any governmental authorities relating to the issues raised in this Settlement.

24. The Court hereby retains and reserves jurisdiction over: (a) implementation of this Settlement and any distributions to the Settlement Class Members; (b) the Action, until the Effective Date, and until each and every act agreed to be performed by the Parties shall have been performed pursuant to the terms of the Agreement, including the exhibits appended thereto; and (c) all Parties, for the purpose of enforcing and administering the Settlement.

25. In the event the Effective Date of the Settlement does not occur, the Settlement shall be rendered null and void to the extent provided by and in accordance with the Agreement, and this Final Approval Order and any other Order entered by this Court in accordance with the terms of the Agreement shall be vacated, *nunc pro tunc*.

26. There being no just reason for delay, the Clerk of Court is hereby directed to enter final judgment forthwith pursuant to Federal Rules of Civil Procedure 58.

It is **FURTHER ORDERED** that this action will be **DISMISSED WITH PREJUDICE**. The Court will retain limited jurisdiction over the case for purposes of enforcing the terms of the settlement.

**IT IS SO ORDERED.**

Dated: November 3, 2026

/s/Terrence G. Berg
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE